IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Sarah Morr,                                            Case No: 3:07CV2046

        Plaintiff,

v.                                                        ORDER

Kamco Industries, Inc.,

        Defendant

       This case primarily involves application of the Family Medical Leave Act, 29 U.S.C. § 2617(a) *et seq.* (FMLA). The defendant, Kamco Industries, Inc. (Kamco), terminated the plaintiff, Sarah Morr, when she returned to work after taking maternity leave. Following her termination, Morr brought suit against Kamco, alleging violations of the FMLA; O.R.C. § 4112.02 (unlawful discriminatory practices) and O.A.C. § 4112-5-05 (sex discrimination); breach of contract; breach of implied covenant of good faith and fair dealing; wrongful discharge; and intentional infliction of emotional distress.

       Pending are plaintiff's motions for summary judgment on the FMLA and discrimination claims [Docs. 12, 19] and defendant's cross motion for summary judgment on the FMLA claim and all state claims except intentional infliction of emotional distress [Doc. 22].

       I deny plaintiff's motions and grant defendant's motion in its entirety. I also *sua sponte*

1

dismiss plaintiff's intentional infliction of emotional distress claim.

**Background**

Plaintiff Morr began working for Kamco, an injection molding supplier in West Unity, Ohio, at the end of January, 2002. At the time of her employment, Morr received a copy of Kamco's Associate Handbook, which contains Kamco's attendance policy. The policy explicitly provides that "if [an associate] is absent for two consecutive working days without notifying Kamco, [the associate] will be terminated as a voluntary quit." (Doc. 21-2 at 39.)

For an associate absent on an approved medical leave of absence, the attendance policy further provides that "[i]f the period of disability is extended past the date on the disability slip, [the associate] must notify the company daily within thirty (30) minutes of the start of [the associate's] shift or attendance points will accumulate . . ." (*Id.*) Furthermore, "a new disability slip must be submitted within five (5) working days from the expiration of the previous disability slip." (*Id.*)

During her tenure at Kamco, Morr received promotions, moving up from a press operator, to a line leader, to a 3P Facilitator. She remained in the latter position until Kamco fired her on May 15, 2007.

Morr's termination related to her leave pursuant to the FMLA. After becoming pregnant, Morr took occasional FMLA leave time to attend medical appointments. During the week of February 12, 2007, Morr contacted Karen Beck, Human Resource Director for Kamco concerning her impending maternity leave. As a result of that meeting, on February 19, 2007, Kamco granted Morr a week of vacation. On February 23, 2007, while on vacation, Morr had an appointment with her physician and received a doctor's slip diagnosing her with pregnancy and gestational edema and identifying her as totally disabled from that date until "6 wks post partum." (*Id.* at 40.) Morr then

gave the doctor's slip, and a disability form indicating her "Estimated" return to work date as "6 wk post partum" and her "Expected" delivery date as "3/30/07," to Karen Beck. (*Id.* at 41-42.) Kamco granted Family and Medical Leave beginning on February 26, 2007.

Morr delivered her baby on March 26, 2007. After giving birth she continued her leave under the FMLA. Morr returned to her treating physician for her after-delivery follow-up appointment on Thursday, May 10, 2007, at which time the doctor cleared Morr to return to work on Monday, May 14, 2007, seven weeks after the birth of her child.

When Morr returned to work on May 14 she had taken FMLA leave for 57 workdays – three fewer than the twelve total workweeks allowed by the Act. On May 15, 2007 – Morr's second day back – she met with Beck and Plant Manager Allan Benien. Beck and Benien informed Morr that Kamco had expected her to return to work on May 7, six weeks after giving birth. As such, Kamco applied attendance points for each day Morr failed to report to work or notify management of her absence from May 7 through May 11, 2007. These absences led Kamco, in accordance with its attendance policy, to terminate Morr as a voluntary quit.

In June, 2007 Morr filed suit in Williams County, Ohio, Court of Common Pleas. Kamco removed the case to this court. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367.

## Discussion

### 1. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure states that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party must inform the district court "of the basis for its motion, and identifying

3

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

In deciding whether to grant summary judgment, the district court "must view the facts in the light most favorable to the non-moving" party. *High v. Butler County YMCA*, 418 F.3d 265, 267 (3d Cir. 2005); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). The party moving for summary judgement bears the initial burden of pointing out to the district court that there is an absence of evidence to support the nonmoving party's case, but need not support its motion with "affidavits or other similar material *negating* the opponent's claim." *Celotex*, *supra*, 477 U.S. at 323 (emphasis in original). Once the moving party has made this showing "the nonmoving party must 'designate' specific facts showing there is a genuine issue for trial." *Vitt v. City of Cincinnati*, 250 F. Supp.2d 885, 889 (S.D. Ohio 2002) (citing *Celotex*, *supra*, 477 U.S. 324).

Furthermore, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984); *see also Anderson*, *supra*, 477 U.S. at 248.

The standard of review for cross-motions for summary judgment does not differ from the standard when one party files such a motion. *Taft Broad. Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir.

1991). "[T]hat both parties have moved for summary judgment does not mean that the court must grant summary judgment as a matter of law for one side or the other." *Kennedy v. City of Zanesville*, 505 F. Supp. 2d 456, 477 (S.D. Ohio 2007). The court must evaluate each motion on its merits. *Id.*

## 2. The Family Medical Leave Act

### A. Interference Claim

The FMLA entitles qualified employees working for covered employers to take temporary leave for medical reasons. 29 U.S.C. § 2612. The statute specifically includes an allowance of twelve weeks leave during any twelve month period "because of the birth of a son or daughter of the employee and in order to care for such son or daughter" or "because of a serious health condition that makes the employee unable to perform the functions of the position." 29 U.S.C. § 2612(a)(1). Congress enacted the law, in part, "to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. § 2601(b)(2).

According to the FMLA, an employee seeking foreseeable leave "based on an expected birth . . . shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave." 29 U.S.C. § 2612(e)(1).[1] The statute also makes clear that once the employee is on leave, the law does not prohibit the employer from "requiring an employee . . . to report periodically to the employer on the status and intention of the employee to return to work." 29 U.S.C. § 2614(a)(5).

When the employee returns to work after taking FMLA authorized leave, he or she shall "be

---

[1] Plaintiff's initial leave request in this case was not foreseeable. Any extension of this leave based on 29 U.S.C. 2612(a)(1)(A) [Entitlement to leave for the birth of a son or daughter], however, would have been foreseeable.

restored by the employer to the position" the employee held before taking leave, or an "equivalent position." 29 U.S.C. § 2614(a)(1). It is unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise" these rights on behalf of a qualified employee, 29 U.S.C. § 2615(a)(1), and any employer who does so is liable to such employee. 29 U.S.C. § 2617(a)(1).

To establish an FMLA interference claim, a plaintiff must show that: 1) he or she was eligible for the FMLA's protections; 2) the employer was covered by the FMLA; 3) he or she was entitled to leave under the FMLA; 4) he or she provided sufficient notice of her intent to take leave; and 5) the employer denied the plaintiff an FMLA benefit to which the plaintiff was entitled. *See, e.g.*, *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).

The parties do not dispute that Kamco is a covered employer and that Morr was eligible for the FMLA's protections. The parties even agree that the FMLA covered Morr's initial leave, which began on February 26, 2007. The issue is whether Morr notified – or even had to notify – the company that she would be taking leave *until* May 14, 2007.

Federal regulations provide some guidance regarding the legality of notice requirements. The regulations require an employee "provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated duration of the leave." 29 C.F.R. § 825.302(c). In such a situation, an "employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed for an expected birth or adoption, for example." *Id.* Such "notice" should then trigger the employer to "inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee." *Id.* Furthermore, "[a]n employer may also require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave." 29 C.F.R.

6

§ 825.302(d). The employee's failure to follow such procedures, however, "will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice." *Id.*

Once the employee is on leave, an employer may require such employee "to report periodically on the employee's status and intent to return to work." 29 C.F.R. § 825.309(a). If an employee finds he or she needs "to take more leave than originally anticipated . . . the employer may require that the employee provide the employer reasonable notice (i.e. within two business days) of the changed circumstances where foreseeable." 29 C.F.R. § 825.309(c).

In this case, Kamco's "Associate Handbook" explains that an employee on long-term absence under the FMLA "must notify the company within thirty (30) minutes of the start of [the employee's] shift on the first day [the employee is] off work, and every subsequent day [the employee is] off work unless [the employee has] submitted a disability slip," which "must be submitted within five (5) working days from the first day of disability." (Doc. 22-2 at 40.) If the period is "extended past the date on the disability slip," the Handbook instructs the employee to "notify the company daily within thirty (30) minutes of the start of [his or her] shift . . . and a new disability slip must be submitted within five (5) working days from the expiration of the previous disability slip." (*Id.*)

Kamco claims that the plaintiff's disability slip, by representing an expected return date of "(6) weeks post partum," indicated that Morr would return to work on May 7, 2007. (Doc. 22-2 at 42-43.) Morr rebuts this argument by noting that her return date was unclear and that Kamco should have assessed her return date based on her due date.

In *Gilliam v. United Parcel Serv.*, 233 F.3d 969, 971 (7th Cir. 2000), the Seventh Circuit held

7

that an employer can require an employee on FMLA leave to keep it informed as to the employee's expected return date. In the case, Gilliam requested leave from his employer on August 21 to be with his fiancee who had just given birth to their child. Despite his knowing about the pregnancy since November and not providing the necessary notice, Gilliam's supervisor granted leave. When Gilliam failed to return the following week, however, UPS fired him.

UPS argued, and the court agreed, that Gilliam was never on FMLA leave. *Id.* ("But it does not follow [from the fact that neither party needs to mention the FMLA for the employee to be on FMLA leave] that all family leave *must* be under the FMLA unless the employer negates that possibility by imposing a 30-day delay.") Arguing in the alternative, the court pointed out that even if Gilliam were on FMLA leave, UPS was still within its rights to fire him because the company had a policy requiring "the employee let his supervisor know, no later than the beginning of the third working day of leave, how much more time will elapse before the employee returns to work." *Id.*; *see also Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 710 (7th Cir. 2002) (plaintiff who qualified for FMLA leave, but provided documentation with no return to work date, could be fired for failing to properly inform employer that she would not return to work following a scheduled vacation).

Similarly, in *Sherrouse v. Tyler Refrigeration Corp.*, 2004 WL 1124722 (N.D. Tex.), plaintiff's doctor did not fax her employer the notice of extension of disability. When the plaintiff returned to work to pick up her disability check she learned that Tyler had terminated her "for failure to return to work and failure to notify the Company that she would be absent." *Id*. at *3. Following the Seventh Circuit, the court reasoned that "[t]he FMLA does not protect an employee who violates her company's 'usual and customary notice and procedural requirement' regarding the duration of

8

her leave." *Id.* at 5. Sherrouse, therefore, could not meet her burden of showing that she was protected by the FMLA when Tyler terminated her. *Id.*; *see also Alexander v. Ford Motor Co.*, 204 F.R.D. 314, 317-18 (E.D. Mich. 2001) (holding that defendant's notice policies and procedures did not violate the FMLA).

In contrast, the Sixth Circuit has held that, in certain circumstances,"employers *cannot* deny FMLA relief for failure to comply with [the employers'] internal notice requirements." *Cavin*, *supra*, 346 F.3d at 723 (emphasis added). In *Cavin*, the plaintiff injured himself in a motorcycle accident on June 21 at which time he notified his employer's security staff of his expected absence from work.[2] *Id.* at 716. The plaintiff continued to contact security each day from June 22-25 and then returned to work on July 6 after a week-long plant shutdown. *Id.* at 717. Honda's policy, however, required employees to call the company's leave coordination department within three days of the first day of leave. As a result, the company refused to grant Cavin FMLA leave for his absences on June 21-23, leading him to sue for interference. *Id.* at 717-18.

The court, in holding that Honda's requirement was inconsistent with the FMLA, pointed out "that the FMLA does not permit an employer to limit his employee's FMLA rights by denying them whenever an employee fails to comply with internal procedural requirements that are more strict than those contemplated by the FMLA." *Id.* at 720. In contrast to Honda's requirements, the FMLA merely states that an employee with a foreseeable need for leave "shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c).

---

[2] The employer allowed employees to call security to report "a one-day absence" or "a one-day sickness." *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 716 (6th Cir. 2003).

Under any interpretation of the facts in this case, Morr failed to meet Kamco's requirements and, more importantly, failed to meet the requirements of the FMLA. The documentation that Morr provided to her employer clearly stated that she planned to be on leave "6 wks post partum." (Doc. 22-2 at 41, 42, 43.) Morr's failure to notify her employer that she planned to extend her leave violates the procedures outlined in the Associates' Handbook, which explain:

> If the period of disability is extended past the date on the disability slip, you must notify the company within (30) minutes of the start of your shift or attendance points will accumulate, and a new disability slip must be submitted within five (5) working days from the expiration of the previous disability slip.

(Doc. 22-2 at 40.)

Morr did not contact Kamco after six weeks nor did she submit a new disability slip extending her FMLA leave beyond six weeks postpartum. *See* 29 C.F.R. § 825.309(a) ("An employer may require an employee on FMLA leave to report periodically on the employee's status and intent to return to work."). As a result, Morr's FMLA leave which began on February 26, 2007, ended on May 7, 2007.

This case differs from *Gilliam*, *Sherrouse*, and *Cavin*, in that Morr provided proper notice, received her FMLA leave, and then exhausted that leave. At several points over the preceding six weeks she could have extended her leave. Morr could have provided verbal notice of the need for maternity leave when she informed her employer that she had just given birth.[3] *See* 29 C.F.R. §

---

[3]

The FMLA regulations provide that an employee is protected if he or she provides some verbal indication of the need for leave *and* indicates "the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c). The employee "need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed for an expected birth or adoption, for example." *Id.*

The insurance forms Morr submitted on or around February 23, 2007, provided her with FMLA leave for "a serious health condition." 29 U.S.C. § 2612(a)(1)(D). In contrast, the birth of Morr's

825.302(c) ("An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, *and the anticipated timing and duration of the leave*.") (emphasis added). She also could have contacted Kamco just before the exhaustion of her leave, though – depending on the timeliness of such a request – Morr may also have had to follow the requirements in the Associates' Handbook. *See* 29 C.F.R. § 825.309 (outlining the notice an employer may require of an employee under the FMLA).

Morr's argument that her insurance form merely put Kamco on notice that she was invoking the FMLA, shifting the burden to the employer to "inquire about details," misconstrues the issue. First there was no need for Kamco to seek such details when the documents provided the relevant information. Second, the inquiry requirement set out in 29 C.F.R. § 825.302(c) relates to the

---

child on March 26, 2007 could have provided her with additional FMLA leave for "the birth of a son or daughter . . . and in order to care for such son or daughter." 29 U.S.C. § 2612(a)(1)(A).

When Morr called Kamco on or around March 26, 2007 to tell her employer she gave birth, she provided the required 30-day notice window for a foreseeable event, 29 C.F.R. § 825.302(a) ("an employee must provide the employer at least 30 days advance notice before FMLA leave is foreseeable based on an expected birth"), because she still had several weeks remaining on her "serious health condition" leave. Therefore, any notice of "the anticipated timing and duration" of leave to take care of her child, coupled with an announcement that she had given birth, could have invoked the protections of 29 C.F.R. § 825.302. This would have been the case, even if Morr failed to follow the additional notice requirements in Kamco's Associate Handbook. 29 C.F.R. § 825(d) (explaining that "failure to follow internal employer procedures will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice"); *Cavin*, 346 F.3d 713, 720 ("[T]he FMLA does not permit an employer to limits his employee's FMLA rights by denying them whenever an employee fails to comply with internal procedural requirements that are more strict than those contemplated by the FMLA.").

However, because there is no evidence that, after giving birth, Morr provided "verbal notice" regarding additional leave and information that indicated the "anticipated timing and duration" thereof, 29 U.S.C. § 2612(a)(1)(A) does not protect Morr for her absences after May 7, 2007. 29 C.F.R. § 825.302(c). (Doc. 24 at 4 ("Also, when Mrs. Morr called in to inform her supervisor Mike Ward and Randy Miller of the birth of her child she did not give any expected return to work date and apparently no one asked for one.")).

11

employer's obligation to discover whether the employee is seeking to take his or her leave under the FMLA, not the length of the leave. *Brenneman v. Midcentral Health Sys.*, 366 F.3d 419 (6th Cir. 2004); *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999).

Morr's claim that her forms did not provide a specific return date is equally misguided. Even assuming "6 wks post partum" was not sufficiently specific, it served as an "anticipated . . . duration of leave" which Morr did nothing to amend in ensuing weeks. 29 C.F.R. § 825.302(c). Morr's lack of communication justified Kamco's decision to rely on the information Morr provided on or around February 23, 2007.[4]

Morr's final argument – that if her form provided any return date it was six weeks after her due date – is counter-intuitive. While several of Morr's documents noted her due date (Doc. 22-2 at 34, 43), the forms separately noted that she would be totally disabled from February 23, 2007 until "(6) weeks post partum." (*Id.* at 41, 42, 43.) Kamco could only interpret this to mean six weeks after giving birth.

Relying on the same information, I hold that Morr's FMLA protected leave ended on May 7, 2007. Her absence from work the following week was just that – an absence. *See Alexander*, *supra*, 204 F.R.D. at 318 ("An employee is no less absent without leave at the conclusion of the valid FMLA leave than they [sic] are during any other point of their employment"). After two such absences Kamco was within its rights to terminate Morr's employment per the company's attendance policy.

Because Morr was not "entitled to leave under the FMLA" between May 7- 11, she cannot

---

[4] Of course Kamco could have contacted Morr to clarify this issue, particularly after Morr failed to show on May 7, 2007. While Kamco's decision to terminate Morr rather than communicate with her may not make it the most thoughtful employer, it does not change my interpretation of the FMLA.

make out a claim for interference. *Cavin*, *supra*, 346 F.3d at 719. Thus, with regard to Morr's FMLA claim, I grant defendant's motion for summary judgment and deny plaintiff's motion for summary judgment.

### B. Waiver of Notice

Morr also argues that Kamco waived the notice requirements of the FMLA by both granting leave and allowing Morr to return to work.

As I explained in the previous section, there is no dispute that Kamco granted FMLA leave. The only issue is when that leave ended. Kamco's grant of leave was a limited one – it did not waive the company's right to terminate Morr for failure to return to work after the granted leave period. In fact, Kamco's policies indicate as much by requiring employees inform the company as to when they plan to return to work and instituting polices for when "the period of disability is extended past the date on the disability slip." (Doc. 22-2 at 40.) *Alexander*, *supra*, 204 F.R.D. at 318-19 (allowing employer policies for extending FMLA leave); 29 C.F.R. § 825.309(c) (employer may require employee provide reasonable notice when changing leave time).

Furthermore, Kamco's failure to terminate Morr immediately on her return to work has no impact on the company's ability to terminate her employment as a voluntary quit. *Cf.* 29 C.F.R. §§ 825.302(g), 825.304(a) (explaining that an employer "*may* waive employees' FMLA notice" requirements (emphasis added)) .

### 3. State Claims

In addition to her FMLA claim, Morr also alleges five state claims: violation of O.R.C. § 4112.02 and O.A.C. § 4112-5-05; breach of contract; breach of implied covenant of good faith and fair dealing; wrongful discharge; and intentional infliction of emotional distress. Plaintiff moves for

summary judgment as to the alleged violation of O.R.C. § 4112.02 and O.A.C. § 4112-5-05. Defendant moves for summary judgment as to all the state claims except intentional infliction of emotional distress.

### A. Sex Discrimination

Morr claims Kamco violated O.R.C. § 4112.02 (unlawful discriminatory practices) and O.A.C. § 4112-5-05 (sex discrimination) by failing to grant "reasonable leave on account of childbearing." O.A.C. § 4112-5-05(G)(5); *see also* O.R.C. § 4112.01(B) (defining decisions "because of sex" or "on the basis of sex," to include those "on the basis of pregnancy").

As explained above, Morr never requested additional leave and never provided notice that she was extending her FMLA leave beyond the already accepted six weeks postpartum. Had she done so, Kamco policies would have allowed for such leave.

Kamco did not penalize Morr because she required time away from work to care for a new son or daughter. Rather, Morr's unexplained absence for two consecutive days led the company to terminate her. *Fannon v. AAP St. Mary Corp.*, 1997 WL 560058, at *3 (6th Cir.) (unpublished) (holding that the firing of a pregnant employee for excessive absenteeism was not entitled to protection under § 4112-5-05(G)); *see also Frank v. Toledo Hosp.*, 84 Ohio App. 3d 610, 617-18 (1992).[5]

---

[5]

Ohio courts analyzing similar discrimination claims often look to the *McDonnell Douglas* test for guidance. *See, e.g.*, *Frantz v. Beechmont Pet Hosp.*, 117 Ohio App. 3d 351, 357 (1996) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this test, the employee must establish a prima facie case by demonstrating that "1) [she] was pregnant; 2) she was discharged; and 3) she was replaced by a nonpregnant person." *Dick v. Mac's Convenience Stores, LLC*, 2007 WL 1288744, at *4 (N.D. Ohio) (internal quotations omitted) (quoting *Marvel Consultants v. Ohio Civil Rights Comm'n*, 93 Ohio App. 3d 838, 841 (1994)). The burden then shifts to the employer, who must "articulate some legitimate, nondiscriminatory reason for the employee's rejection," which shifts the burden back to the employee to show that the employer's justification is pretextual.

Because there is no evidence that Kamco's termination of Morr constituted unlawful discrimination, with regard to the second claim I deny plaintiff's motion for summary judgment and grant defendant's motion for summary judgment.

### B. Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff alleges her employment was terminated in breach of a contract based on Kamco's "personnel policies, employee handbook, and procedure manuals, retirement and profit-sharing plan and employee guidelines." (Doc. 1, Attach. 1 at ¶ 28.)

Ohio courts are clear that "[e]mployee handbooks are not in and of themselves a contract for employment." *Senter v. Hillside Acres Nursing Ctr. of Willard, Inc.*, 335 F. Supp. 2d 836, 843 (N.D. Ohio 2004) (quoting *Wright v. Honda of Am. Mfg., Inc.*, 73 Ohio St. 3d 571, 575 (1995)). In fact, "a disclaimer in an employee handbook stating that employment is at will precludes an employment contract . . . ." *Soletro v. Nat'l Fed'n of Indep. Bus.*, 130 F. Supp. 2d 906, 916 n.14 (N.D. Ohio 2001) (citing *Wing v. Anchor Media, Ltd. of Tex.*, 59 Ohio St. 3d 108 (1991)).

In this case, Kamco's Associate Handbook explicitly provides: "Your employment with Kamco is 'at will.' This means that your employment and compensation can be terminated at any time, and for any reason, without notice, at the option of either you or the company." (Doc. 22-2 at 38.)

In addition to being advised of her at-will employment status, Morr signed a statement

---

*McDonnell Douglas, supra*, 411 U.S. at 802.

Applying such an analysis, Morr still loses her claim, as she does not indicate that Kamco replaced her with a non-pregnant employee. Even assuming *arguendo*, that Morr pled a prima facie case, Kamco has a "legitimate, nondiscriminatory reason" for dismissing her: she missed two consecutive days without notifying Kamco, in breach of the company's attendance policy.

acknowledging she understood that Kamco's Associate Handbook "does not constitute a contract of employment." (Doc. 22-2 at 33.) For these reasons, Morr's breach of contract claim has no merit. *See Clark v. Collins Bus Corp.*, 136 Ohio App. 3d 452 (2000) ("In an at-will employment relationship, either employer or employee may terminate that relationship for any reason that is not contrary to law."); *see also Beaver v. RGIS Inventory Specialists, Inc.*, 2005 WL 1607045, at *4 (6th Cir.) (unpublished) (holding that breach of contract claim was without merit where handbook stated it was not a contract); *Deprisco v. Delta Air Lines, Inc.*, 2004 WL 93943, at *6 (6th Cir.) (unpublished) (holding that summary judgment was proper on employee's breach of contract claim where human resources manual established that employment was at will). Thus, I grant defendant's motion for summary judgment as to the plaintiff's breach of contract claim.

Similarly, Ohio law does not appear to recognize a cause of action for breach of an implied covenant of good faith and fair dealing where an employee has an at-will employment relationship with her employer. *Pyle v. Ledex, Inc.*, 49 Ohio App. 3d 139, 146 (1988) (noting that the Ohio Supreme Court "has refused to recognize a cause of action based on a covenant of good faith and fair dealing, but has instead held that at-will employment relationships, may be terminated for any cause and at any time 'even if done in gross or reckless disregard of an employee's rights.'" (quoting *Phung v. Waste Mgmt., Inc.*, 23 Ohio St. 3d 100, 102 (1986))); *see also Haynes v. Kirby Co.*, 1996 WL 84645, at *4 (6th Cir.) (unpublished) (granting summary judgment on claim alleging breach of the implied covenant of good faith and fair dealing where an employment relationship was terminable at will). Therefore, I also grant defendant's motion for summary judgment as to the plaintiff's claim alleging breach of an implied covenant of good faith and fair dealing.

### C. Wrongful Discharge

Plaintiff's wrongful discharge claim fails as a matter of law because it is based entirely on her allegation that Kamco violated the FMLA and discriminated against Morr on the basis of her sex in violation of O.R.C. § 4112. The Ohio Supreme Court has held that Ohio does not "recognize a common-law claim when remedy provisions are an essential part of the statutes on which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the wrongful conduct." *Leininger v. Pioneer Nat'l Latex*, 115 Ohio St. 3d 311, 317 (2007); *Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240, 244-49 (2002) (plurality opinion). In fact, the Ohio Supreme Court has explicitly failed to recognize a cause of action for wrongful discharge when it is based on a violation of the FMLA or O.R.C. § 4112. *See Wiles*, *supra*, 96 Ohio St. 3d at 246 (holding that "Ohio does not recognize a cause of action for wrongful discharge in violation of public policy when the cause of action is based solely on a discharge in violation of the FMLA"); *Cavin*, *supra*, 346 F.3d at 727 (same); *Leininger*, *supra*, 115 Ohio St. 3d at 319 (holding that plaintiff had no public policy cause of action for alleged age discrimination violation of O.R.C. § 4112).

Under Ohio law, Morr cannot maintain a separate wrongful discharge claim because her allegations concern actions: 1) prohibited by federal and state employment law statutes and 2) for which those statutes provide adequate remedies. *See, e.g.*, Leininger, *supra*, 115 Ohio St. 3d at 318 ("R.C. 4112.99 provides an independent civil action to seek redress for any form of discrimination identified in the chapter."); *Wiles*, *supra*, 96 Ohio St. 3d at 244-46 (noting "there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy," and holding that the FMLA met this requirement). Moreover, even if Morr could bring a public policy claim under these circumstances, it would fail for the reasons discussed in the sections above

17

relating to plaintiff's FMLA and state claims.

Accordingly, I grant Kamco's motion for summary judgment on plaintiff's wrongful discharge claim.

### D. Intentional Infliction of Emotional Distress

Given the aforementioned judgments, I also *sua sponte* dismiss plaintiff's claim for intentional infliction of emotional distress. To succeed on such a claim Morr would have to show:

> 1) the defendant either intended to cause emotional distress or knew or should have known that his actions would result in serious emotional distress to the plaintiff; 2) the defendant's conduct was "so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;" 3) the actor's actions proximately caused of plaintiff's psychic injury; and 4) the mental anguish suffered by plaintiff is of such a serious nature that no reasonable man could be expected to endure it.

*Hale v. Village of Madison*, 493 F. Supp. 2d 928, 940 (N.D. Ohio 2007) (citing *Tschantz v. Ferguson*, 97 Ohio App. 3d 693, 702 (1994)).

The record reveals that there is no genuine issue regarding this claim; based on the alleged facts and evidence, Morr cannot not make a showing that there was extreme or outrageous conduct or that defendant intentionally or recklessly caused her severe emotional distress. *See Yeager v. Local Union 20, Teamsters*, 6 Ohio St. 3d 369, 374 (1983) (explaining Ohio's intentional infliction of emotional distress tort).

### Conclusion

For the foregoing reasons, it is therefore,

ORDERED that

1) Defendant's motion for summary judgment [Doc. 22] be, and the same hereby is, granted.

2) Plaintiff's motions for summary judgment [Docs. 12 and 19] be, and the same hereby are,

denied.

3) Plaintiff's claim for intentional infliction of emotional distress be, and the same hereby is, dismissed.

So ordered.

s/James G. Carr  
James G. Carr  
Chief Judge